UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON

_____

DIANNA OVERTON,              :    HON. MARY L. COOPER, U.S.D.J.

          Plaintiff,        :
                                  Civil Action No. 09-6299 (MLC-LHG)
     v.                      :

BRIAN SHRAGER, M.D.,         :
     et al.,
                             :
          Defendants.        :

_____

_____

BRIEF ON BEHALF OF DEFENDANTS UNIVERSITY OF MEDICINE AND
DENTISTRY OF NEW JERSEY ("UMDNJ"), AND DR. SANDRA BRAIMBRIDGE IN
THE SCOPE OF HER EMPLOYMENT WITH UMDNJ, IN SUPPORT OF A MOTION TO
DISMISS THE THIRD AMENDED COMPLAINT PURSUANT TO <u>Fed. R. Civ. P.</u>
12(b)(6)

_____

                         PAULA T. DOW
                         ATTORNEY GENERAL OF NEW JERSEY
                         R.J. Hughes Justice Complex
                         25 Market Street
                         P.O. Box 112
                         Trenton, New Jersey 08625
                         Attorney for UMDNJ, and Dr. Sandra
                              Braimbridge in the scope of her
                              employment with UMDNJ

By:  Daniel M. Vannella
     Deputy Attorney General

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS

      A. Background and Allegations Against Non-Moving
Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B. Allegations Against Moving Defendants . . . . . . . . . 5

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT

      POINT I

            THE CLAIMS IN THE THIRD AMENDED COMPLAINT AGAINST
UMDNJ AND DR. BRAIMBRIDGE, IN HER OFFICIAL
CAPACITY, FROM OCTOBER 1, 2008 TO PRESENT,
MUST BE DISMISSED BECAUSE THEY ARE BARRED BY THE
ELEVENTH AMENDMENT, AND  BECAUSE THOSE CLAIMS ARE
NOT AGAINST "PERSONS" AMENABLE TO SUIT UNDER § 1983 . 10

            A. Overton's § 1983 Claims Against UMDNJ, and
Against Dr. Braimbridge in Her Official Capacity
as a UMDNJ Employee, Are Barred by the Eleventh
Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            B. UMDNJ, and Dr. Braimbridge in Her Official
Capacity as a UMDNJ Employee, Are Not "Persons"
Amenable to Suit Under § 1983 . . . . . . . . . . . . . 12

      POINT II

            OVERTON HAS FAILED TO STATE A CLAIM OF
DELIBERATE INDIFFERENCE AGAINST EITHER UMDNJ
OR DR. BRAIMBRIDGE . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 20

i

## TABLE OF AUTHORITIES

### UNITED STATES CONSTITUTION

U.S. Const. amend. XI . . . . . . . . . . . . . . . . . . . . 10-11

### FEDERAL STATUTE

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . 12

### FEDERAL CASES

Alabama v. Pugh, 438 U.S. 781 (1978) . . . . . . . . . . . . 10

Andrews v. Camden County, 95 F. Supp. 2d 217 (D.N.J. 2000) . . 15

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) . . . . . . . . 9, 10, 16

Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003) . . . . . . . 14

Baker v. Monroe Twp., 50 F.3d 1186 (3d Cir. 1995) . . . . . . . 15

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) . . . . . . . . 9

Estelle v. Gamble, 429 U.S. 97, 103 (1976). . . . . . . . . 13, 14

Farmer v. Brennan, 511 U.S. 825 (1994) . . . . . . . . . . . . 14

Gittlemacker v. Prasse, 428 F.2d 1 (3d Cir. 1970) . . . . . . . 15

Hudson v. McMillian, 503 U.S. 1, 9 (1992) . . . . . . . . . . 14

Kentucky v. Graham, 473 U.S. 159 (1985) . . . . . . . . . . . 11

Natale v. Camden County Corr. Facility,
318 F.3d 575 (3d Cir. 2003) . . . . . . . . . . . . . 14, 16, 17

Pennshurst State Sch. & Hosp. v. Halderman,
465 U.S. 89 (1984) . . . . . . . . . . . . . . . . . . . . . 10

Quern v. Jordan, 440 U.S. 332 (1979) . . . . . . . . . . . . . 10

Rasmussen v. Larson, 863 F.2d 603 (8th Cir. 1988) . . . . . . . 15

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988) . . . . 15, 16

Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989) . . . . 12

ii

**PRELIMINARY STATEMENT**

Plaintiff Dianna Overton, an inmate incarcerated within the New Jersey Department of Corrections ("NJDOC"), specifically the Edna Mahan Correctional Facility for Women ("EMCF") in Clinton, New Jersey, has filed a third amended complaint against several defendants.  This third amended complaint raises § 1983 claims that defendants violated her Eighth Amendment rights.  Among others, she names as defendants the University of Medicine and Dentistry of New Jersey ("UMDNJ"), and Dr. Sandra Braimbridge.  Against Dr. Braimbridge, Overton alleges claims that purportedly arise both from her prior employment with Correctional Medical Services ("CMS") before October 1, 2008, and during her employment with UMDNJ from October 1, 2008 onward.  For purposes of this motion, only the claims against Dr. Braimbridge as a UMDNJ employee will be addressed.

As to these three aforementioned defendants, the third amended complaint should be dismissed.  UMDNJ enjoys sovereign immunity from suit; and Dr. Braimbridge also enjoys sovereign immunity to the extent the claims are brought against her in her official capacity as a UMDNJ employee.  In addition, Overton has failed to allege that UMDNJ and/or Dr. Braimbridge were deliberately indifferent to her serious medical needs.  Therefore, the third amended complaint should be dismissed as against these defendants.

1

**PROCEDURAL HISTORY**

On December 11, 2009, Overton, acting <u>pro se</u>, submitted the original civil rights complaint in this matter.  She named several defendants, including Dr. Sandra Braimbridge and UMDNJ; and raised a claim of deliberate indifference in violation of the Eighth Amendment.  However, on December 23, 2009 the court, reviewing the complaint pursuant to 28 <u>U.S.C.</u> § 1915(e)(2), dismissed UMDNJ while permitting the complaint to be filed against the remaining defendants.

The court thereafter appointed <u>pro bono</u> counsel for plaintiff.  On April 9, 2010, an affidavit of service was served upon Dr. Braimbridge.  On April 15, 2010, Attorneys from Marks, O'Neill, O'Brien & Courtney, PC entered their appearances on behalf of Dr. Braimbridge, but solely as to the scope of her employment with CMS up to October 1, 2008.  On July 7, 2010, the undersigned entered an appearance for Dr. Braimbridge limited to the scope of her employment with UMDNJ from October 1, 2008 onward.

Overton, through her attorneys, filed her first amended complaint on May 24, 2010.  On June 25, 2010, Overton moved pursuant to <u>Fed. R. Civ. P.</u> 60(b) to set aside the judgment against UMDNJ and reinstate it as a defendant.  When this motion was granted, Overton moved to amend her complaint a second time.  Although the motion to amend was granted on August 11, 2010, the second amended complaint was not deemed filed with the court until

2

October 22, 2010.  A waiver of service had been entered by UMDNJ in the meantime, on September 17, 2010.

On November 4, 2010, UMDNJ and Dr. Braimbridge (for allegations from October 1, 2008 onward) filed a motion to dismiss Overton's second amended complaint.  On December 13, 2010, Overton filed a notice of voluntary dismissal as to certain claims against defendants.[1]  The next day, the court dismissed without prejudice all pending motions to dismiss, granting the plaintiff leave to file a third amended complaint, and permitting the defendants thereafter to file any appropriate dispositive motions.  Overton filed her third amended complaint on December 29, 2010.

This motion to dismiss the third amended complaint, on behalf of UMDNJ, and Dr. Braimbridge as a UMDNJ employee from October 1, 2008 to present, follows.

<u>STATEMENT OF FACTS</u>[2]

**A. Background and Allegations Against Non-Moving Defendants**

Plaintiff Dianna Overton is an inmate currently incarcerated at EMCF.  3d Amended Compl. ¶ 1.  In the time period relevant to this matter, Dr. Braimbridge was a physician employed or contracted first by CMS and later by UMDNJ.  See id. ¶ 2.  From March 14 2008,

---

[1] The dismissal of certain claims effectively dismissed from this matter defendant NJDOC, which the undersigned had also represented up to that point.

[2] The allegations in Overton's third amended complaint are accepted as true solely for purposes of this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

when Overton entered the custody of the NJDOC, up through September 30, 2008, CMS was the contracted medical provider for the NJDOC. Id. ¶¶ 6, 14, 24.   From October 1, 2008 onward, UMDNJ, "an institution of the State of New Jersey," assumed the role of medical provider for the NJDOC. Id. ¶¶ 7, 25.

Before Overton began her period of incarceration at EMCF, she had been diagnosed with several "pre-existing medical conditions, including lupus, severe hypertension, chronic renal disease requiring hemodialysis treatment, thyroid disease, chronic obstructive pulmonary disease, congestive heart failure[,] and a seizure disorder triggered by her hypertension." Id. ¶ 16.   She informed EMCF's contracted medical staff of these conditions upon her arrival at EMCF in March 2008.   Id. ¶ 17.   She also provided medical staff "with a list of the prescription medications and supplements she was taking which included aspirin, iron, Advair®, prednisone, minoxidle and clonidine, Renagel®, PhosLo®, Sensipar®[,] and Keppra®."   Id.   She also advised medical staff at that time of her "long history of severe hypertension" and that the treatment plan her previous doctors used to treat that condition "was a combination treatment of mioxidle and clonidine."   Id.

Overton's mionxidle and clonidine treatment was switched with "a different kind of hypertension medication," without any allegation in the pleading that she experienced any delay in receiving one form of medication or another.   Id. ¶ 18.   She was

advised that mioxidle was a "non-formulary medication" and that she would receive an alternative formulary medication to treat her condition.  <u>Id.</u> ¶ 19.  In April 2008, Overton's blood pressure elevated, and on April 7, 2008 she "suffered three seizures." <u>Id.</u> ¶¶ 18, 20.  Overton's personal belief, of which she informed her treating physician at the time, was that this occurred because her hypertension medication was switched and that the only "correct medication" was the previously prescribed minoxidle and clonidine treatment.  <u>Id.</u> ¶ 19.  Notwithstanding, at this point her doctors placed her back on a "combination minoxidle and clonidine treatment," which "successfully controlled [her] hypertension condition until August 2008." <u>Id.</u> ¶ 20.  At that point, allegedly due to "an extended delay in filling the prescription," Overton suffered a brain hemorrhage in September 2008. <u>Id.</u> ¶ 23.  Upon her release from St. Francis Medical Center, she was directed to continue receiving the minoxidle and clonidine treatment, which apparently was done albeit not "immediately." <u>Id.</u>

## B. Allegations Against Moving Defendants

The above allegations, for purposes of this dispositive motion on behalf of moving defendants UMDNJ and Dr. Braimbridge (as a UMDNJ employee), are not directed against them and therefore have no bearing on the merits of plaintiff's claims against them.  They were recounted here simply to provide the proper context for what follows.

On October 1, 2008, UMDNJ assumed the contract with the NJDOC to provide comprehensive medical services to EMCF inmates.  Id. ¶ 25.  The very next month, in November 2008, Overton's doctors advised her that she needed to be placed on a kidney transplant list.  Id. ¶ 27.  They promptly placed an order for Overton to undergo a kidney transplant evaluation, which is the "pre-requisite" step to her receiving the transplant.  Id.  However, Overton did not receive the evaluation "until after December 2009, ... which significantly delayed the transplant process."  Id. ¶ 28.

Overton does not specify in her third amended complaint how much of this period of time, if any, was an unnecessary delay; or the cause of any unnecessary delay that did occur.  She also alleges that "[t]o date" she "still has not received a kidney transplant"; and that she has and "will continue to get infections" from her dialysis catheter until she receives a kidney transplant.  Id. ¶¶ 28-29.  She does not specify what role or responsibility any of the named defendants had in identifying a match for a kidney transplant.  She also does not include the results of her kidney transplant evaluation with her allegations, or otherwise express the relative likelihood in her ever receiving a suitable transplant given her medical history and other relevant factors.

Overton also alleges that from October 2008 to present, she "has not received timely refills of her medically necessary prescription medications on many occasions."  Id. ¶ 30.  The only

6

specific example of this alleged in the third amended complaint is a single occasion in which she "was without her Sensipar® medication ... for an entire month because the medical department refused to fill her prescription."  Id.  She alleges that this caused her parathyroid hormone levels to "skyrocket[]."  Id.  She further alleges that as a direct result, her "nephrologist placed an order for [a partial thyroidectomy] in January/February 2010," which she received in July 2010.  Id. ¶ 31.  Again, she claims that the "delay" between the order for a partial thyroidectomy and the actual scheduled procedure was "unreasonable," id. ¶ 37, but does not elaborate on what portion of the delay was unreasonable rather than inevitable.

Finally, Overton alleges that the "policy" - referenced in subsection A, supra - of "not providing 'non-formulary' medications to inmates continued after UMDNJ began providing comprehensive medical services at [EMCF]."  Id. ¶¶ 26, 39.  Beyond this bare, conclusory allegation, however, Overton does not specify when UMDNJ employees actually acted pursuant to this "policy."  That is, she does not specify when she did not receive her minoxidle and clonidine treatment.  She does allege that she was receiving this "non-formulary treatment" again prior to UMDNJ's takeover of provision of medical care, id. ¶ 20; and she also specifically alleges that she was receiving the "non-formulary treatment" in late-2008 around the time UMDNJ assumed provision of medical care.

id. ¶ 23.  She does not specify that she failed to receive any other prescribed medication because of an alleged UMDNJ policy to not provide non-formulary medications.  She also does not allege when, or even that, she suffered any adverse effects from UMDNJ employees allegedly providing her with non-formulary medications.

As part of the cause of action, Overton claims that Dr. Braimbridge, "while in the employ of both CMS and UMDNJ," was deliberately indifferent by (1) "failing to properly monitor and treat [Overton's] hypertension and kidney ailments," (2) "failing to provide adequate and timely treatment for [her] serious medical conditions," and (3) "acquiescing in unreasonable delays in [her] receipt of necessary medical treatment for non-medical reasons, including receipt of medications for serious medical needs, a kidney transplant evaluation and the partial thyroidectomy surgery." Id. ¶ 37.  However, no specific factual allegations are raised against Dr. Braimbridge as a UMDNJ employee from October 1, 2008 to present.

Overton claims that UMDNJ, as CMS allegedly did before it, implemented a "systematic policy of not filling prescriptions for 'non-formulary' medications." Id. ¶ 39.  She seems to separately claim that UMDNJ, along with CMS, "fail[ed] to act affirmatively to create a treatment policy so that inmates at [EMCF] received prescriptions and prescription refills for medically necessary and life sustaining medications in a timely manner." Id. ¶ 38.  It is

8

unclear whether this is a separate claim from that addressed in paragraph 39 of the third amended complaint. It is unclear whether Overton is alleging both that UMDNJ (1) had a policy to not refill prescription medications, and (2) also should have implemented a policy to refill prescription medications; or whether she is alleging only the former.

## STANDARD OF REVIEW

Within a motion to dismiss are two working principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Rather, to be "entitled to the assumption of truth," legal conclusions "must be supported by factual allegations." Id. at 1950.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id.; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Determining whether a claim for relief is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, supra, 129 S. Ct. at 1950. A claim is plausible when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. It is not plausible when it

offers nothing but "'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,'" or "'naked assertion[s]' devoid of 'further factual enhancement.'"   Id. (quoting Twombly, supra, 550 U.S. at 555, 557 (alteration in original)).

The requisite trigger, then, is something "more than a sheer possibility that a defendant has acted unlawfully."   Id.   When the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."   Id. at 1950 (quoting Fed. R. Civ. P. 8(a)(2) (alteration in original)).

## ARGUMENT

### POINT I

**THE CLAIMS IN THE THIRD AMENDED COMPLAINT AGAINST UMDNJ AND DR. BRAIMBRIDGE, IN HER OFFICIAL CAPACITY, FROM OCTOBER 1, 2008 TO PRESENT, MUST BE DISMISSED BECAUSE THEY ARE BARRED BY THE ELEVENTH AMENDMENT, AND BECAUSE THOSE CLAIMS ARE NOT AGAINST "PERSONS" AMENABLE TO SUIT UNDER § 1983.**

**A. Overton's § 1983 Claims Against UMDNJ, and Against Dr. Braimbridge in Her Official Capacity as a UMDNJ Employee, Are Barred by the Eleventh Amendment.**

In the third amended complaint, Overton alleges Eighth Amendment violations against defendants UMDNJ and Dr. Braimbridge, which are actionable under 42 U.S.C. § 1983.   3d Amended Compl. ¶¶ 34-39, 41-43, 44-47.   Further, in this third amended complaint Overton seeks compensatory and punitive damages.   Id. ¶ 50.

10

However, the Eleventh Amendment bars suits for damages in federal court against a State or an agency thereof, absent its consent. <u>Pennshurst State Sch. & Hosp. v. Halderman</u>, 465 <u>U.S.</u> 89, 99-102 (1984); <u>Quern v. Jordan</u>, 440 <u>U.S.</u> 332, 336-40 (1979); <u>Alabama v. Pugh</u>, 438 <u>U.S.</u> 781, 782 (1978). <u>See generally</u> U.S. Const. amend. XI. This bar also provides immunity for State officials who are sued for damages in their official capacities. <u>Kentucky v. Graham</u>, 473 <u>U.S.</u> 159, 169-71 (1985). Although prospective relief may be sought against State officials acting in their official capacity, <u>id.</u> at 167 n.14, a monetary award indistinguishable from one against the State itself is prohibited by the Eleventh Amendment.

In her third amended complaint, Overton claims that from October 1, 2008 onward, UMDNJ, and Dr. Braimbridge as a UMDNJ employee, violated her Eighth Amendment right to be free from cruel and unusual punishment. UMDNJ, as Overton states in her pleading, is identified in this matter as an institution of the State of New Jersey. 3d Amended Compl. ¶ 7. UMDNJ denies Overton's allegations and has not consented to suit in this District Court. As such, UMDNJ is entitled to Eleventh Amendment immunity from suit for damages. Further, to the extent that Overton may raise claims against Dr. Braimbridge in her official capacity as a UMDNJ employee, those claims likewise would be barred under the Eleventh Amendment, as Dr. Braimbrige also denies the allegations against

11

her and has not consented to this suit.  These claims, therefore, must be dismissed with prejudice.

**B. UMDNJ, and Dr. Braimbridge in Her Official Capacity as a UMDNJ Employee, Are Not "Persons" Amenable to Suit Under § 1983.**

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

For a defendant to be liable under section 1983, he or she must meet the statute's definition of a "person."  The Supreme Court has held that a State, or an official of the State acting in his or her official capacity, fails to meet that definition.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  As the Court found, although State officials "literally are persons," an official-capacity claim "is not a suit against the official but rather a suit against the official's office.  As such, it is no different from a suit against the State itself."  Id. (citing Graham, supra, 473 U.S. at 165-66).  The Court also recognized that Congress, in enacting § 1983, did not intend to override well-established common-law immunities or defenses, namely that of a State not to be sued without its consent.  See id.

Here, UMDNJ, and Dr. Braimbridge in her official capacity as a UMDNJ employee, are not "persons" amenable to suit under section 1983, and they have not consented to suit.  Therefore, on this additional basis, all claims in the third amended complaint must be dismissed, with prejudice, against UMDNJ and Dr. Braimbridge in her official capacity.

### POINT II

**OVERTON HAS FAILED TO STATE A CLAIM OF DELIBERATE INDIFFERENCE AGAINST EITHER UMDNJ OR DR. BRAIMBRIDGE.**

Even without UMDNJ's immunity from suit under § 1983 as an "institution of the State," 3d Amended Compl. ¶ 7, Overton's deliberate indifference claim nevertheless should be dismissed for failure to state a claim.  Likewise, the claims against Dr. Braimbridge in her individual capacity as a UMDNJ employee (October 1, 2008 to present)[3] should be dismissed for failure to state a claim.

The government has a general "obligation to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 103 (1976).  An Eighth Amendment violation

---

[3] The reason for this continued distinction, again, is because Dr. Braimbridge, as a State employee from October 1, 2008 to present, is being represented by the undersigned via the New Jersey Attorney General's Office.  As of the date this motion was filed, Dr. Braimbridge is being represented by private counsel from Marks, O'Neill, O'Brien & Courtney, PC as to all allegations in this complaint that precede the October 1, 2008 transfer: that is, all claims arising during the scope of her employment with CMS.

results if prison officials act with "deliberate indifference to serious medical needs of prisoners." Id. at 104. However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. "An accident," or "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Id. at 105-06. Thus, in order to present an actionable claim, the prisoner must establish both acts "evidenc[ing] deliberate indifference," and a serious medical need. Id. at 106; see Hudson v. McMillian, 503 U.S. 1, 9 (1992); Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).

The Third Circuit has defined a serious medical need as (1) "one that has been diagnosed by a physician as requiring treatment"; or (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention"; or (3) one in which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations omitted). Further, to demonstrate that an official was deliberately indifferent to such a need, he must "know[] of and disregard[] an excessive risk to inmate health or safety"; that is, he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

14

exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 <u>U.S.</u> 825, 837 (1994).  Mere negligence or malpractice does not establish a deliberate indifference claim.  <u>Id.</u> at 835.  Further, "a prisoner's disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief." <u>Andrews v. Camden County</u>, 95 <u>F. Supp.</u> 2d 217, 228 (D.N.J. 2000).  Nor can a claim for relief generally arise from a prison doctor's professional disagreement with the recommendations of other doctors.  <u>See</u> <u>White v. Napoleon</u>, 897 <u>F.</u>2d 103, 109-10 (3d Cir. 1990).

Even more generally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs ...." <u>Rode v. Dellarciprete</u>, 845 <u>F.</u>2d 1195, 1207 (3d Cir. 1988).  Personal involvement is sufficiently shown only with "particular[]" allegations of participation or actual knowledge and acquiescence. <u>Id.</u>  Although knowledge may be inferred from the circumstances, it nevertheless must be actual knowledge.  <u>See</u> <u>Baker v. Monroe Twp.</u>, 50 <u>F.</u>3d 1186, 1194 (3d Cir. 1995); <u>id.</u> at 1201 n.6 (Alito, J., concurring and dissenting).  A plaintiff "must portray specific conduct by state officials which violates some constitutional right." <u>Gittlemacker v. Prasse</u>, 428 <u>F.</u>2d 1, 3 (3d Cir. 1970); <u>see also</u> <u>Rasmussen v. Larson</u>, 863 <u>F.</u>2d 603, 605 (8th Cir. 1988) (holding that § 1983 liability does not lie against supervisory

15

officers absent a showing of personal and direct involvement in the alleged constitutional violation).

"Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Rode, supra, 845 F.2d at 1207. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Iqbal, supra, 129 S. Ct. at 1948. As such, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. "[P]urpose rather than knowledge is required to impose [constitutional] liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her [supervisory] responsibilities." Id. at 1949.

This principle also generally applies to the entities employing such subordinates. In order for an entity to be liable under § 1983 for the actions of its employees, there must be evidence of "a relevant ... policy or custom and that the policy caused the constitutional violation [alleged]." Natale, supra, 318 F.3d at 583-84. "Not all state action rises to the level of a custom or policy." Id. at 584. Three situations where a policy may be said to cause the alleged violation include when (1) "the

appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy"; (2) "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself"; and (3) "the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Id.

Overton's factual allegations against UMDNJ, and Dr. Braimbridge as a UMDNJ employee, are contained in paragraphs 25-31 of the third amended complaint. These paragraphs allege (1) a delay in receiving a kidney transplant evaluation, though with the concession that UMDNJ doctors had promptly placed an order for said evaluation; (2) that Overton has not yet received a kidney transplant; and (3) one specific allegation that "the medical department refused to refill [Overton's Sensipar®] prescription" for a month, allegedly causing an adverse medical reaction. Lacking are any factual allegations of specific actions by UMDNJ employees that resulted in the alleged delay in her receiving a transplant evaluation after they ordered it. Also lacking are allegations specifying what UMDNJ employees did, or failed to do,

17

that has resulted in delays in Overton's receiving a kidney transplant.

Overton then makes the claim(s) in paragraphs 38-39 of her third amended complaint that UMDNJ failed to create a policy for inmates to receive medications in a timely manner, and/or had a "systematic policy of not filling prescriptions for 'non-formulary' medications." Although she alleges that since October 2008 she "has not received timely refills of her medically necessary prescription medications on many occasions," 3d Amended Compl. ¶ 30, she does not elaborate further, namely as to the medication that she was denied, the instances in which this occurred, and the harm that resulted. This general allegation also gives defendant UMDNJ no basis on which to investigate or defend against the constitutional claim it purportedly constitutes.

Overton's only specific allegation on this point is that sometime between October 2008 and January/February 2010, over a one-month period, she was not given a refill of her Sensipar® medication. Id. Based on the allegation itself, it is apparent that she had received this medication before and after this one instance. Therefore, even assuming that the individuals in the "medical department" who were responsible for refilling her prescription, refused to do so, see id., that is hardly evidence that UMDNJ implemented a "systematic policy of not filling prescriptions," see id. ¶ 39. Similarly, it is no more evidence

18

that UMDNJ was deliberately indifferent in failing to implement a new or different policy on the refilling of medication. Cf. id. ¶ 38. The alleged failure to refill her medication can be just as easily attributable, if not more so, to the unnamed staff member's negligence or malfeasance than to a Eighth Amendment "policymaker" violation by UMDNJ.

Finally, because there are no allegations at all against Dr. Braimbridge from October 1, 2008 onward, cf. id. ¶¶ 25-31, let alone allegations that demonstrate personal and direct involvement in the alleged violation of Overton's constitutional rights, the individual-capacity claims against Dr. Braimbridge in the third amended complaint must be dismissed.

For the foregoing reasons, Overton has failed to state a claim of deliberate indifference against UMDNJ or Dr. Braimbridge within her allegations from October 1, 2008 to present. On this additional basis, therefore, the claims against UMDNJ in the third amended complaint should be dismissed. Further, all claims against Dr. Braimbridge, including those against her in her individual capacity, from October 1, 2008 to present, should be dismissed.

19

## CONCLUSION

Based on the foregoing, this motion to dismiss the thid amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), should be granted.   As such, Overton's third amended complaint against defendant UMDNJ should be dismissed.   Further, all claims against Dr. Sandra Braimbridge in the scope of her employment with UMDNJ, from October 1, 2008 onward, also should be dismissed.

Respectfully submitted,

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY


By:   /s/ Daniel M. Vannella
Daniel M. Vannella
Deputy Attorney General

DATED: January 5, 2011

20