**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|                          |   |                                    |
|--------------------------|---|------------------------------------|
| DIANNA OVERTON,          | : | CIVIL ACTION NO. 09-6299 (MLC)     |
| Plaintiff,               | : |                                    |
|                          | : | **MEMORANDUM OPINION**             |
| v.                       | : |                                    |
| BRIAN SHRAGER, et al.,   | : |                                    |
| Defendants.              | : |                                    |

**COOPER, District Judge**

The plaintiff, Dianna Overton, brought this action pursuant to 42 U.S.C. § ("Section") 1983 alleging violations of her Eighth Amendment rights. (Dkt. entry no. 75, 3d Am. Compl. at ¶¶ 32-49.) Defendants Dr. Sandra Braimbridge ("Dr. Braimbridge") and the University of Medicine and Dentistry of New Jersey ("UMDNJ") now move to dismiss the Third Amended Complaint insofar as asserted against them with respect to events occurring after October 1, 2008, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) ("Braimbridge/UMDNJ Motion"). (Dkt. entry no. 77, Braimbridge/UMDNJ Mot. Dismiss & Braimbridge/UMDNJ Br. at 1.) Defendant Dr. Brian Shrager ("Dr. Shrager") separately moves to dismiss the Third Amended Complaint insofar as asserted against him pursuant to Rule 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56 ("Shrager Motion"). (Dkt. entry no. 78, Shrager Mot. Dismiss.) Defendants Dr. Braimbridge and Correctional Medical Services, Inc. ("CMS") separately move to

dismiss the Third Amended Complaint insofar as asserted against them with respect to events occurring up to and including October 1, 2008, pursuant to Rule 12(b)(6) ("Braimbridge/CMS Motion"). (Dkt. entry no. 80, Braimbridge/CMS Mot. Dismiss & Braimbridge/CMS Br. at 1.)  The plaintiff opposes the separate motions.  (Dkt. entry no. 81, Pl. Consol. Br.)

The Court determines the separate motions on the briefs without an oral hearing, pursuant to Rule 78(b).  For the reasons stated herein, the Court will grant the Braimbridge/UMDNJ Motion, grant the Shrager Motion, and grant in part and deny in part the Braimbridge/CMS Motion.

**BACKGROUND**

The plaintiff is a state prisoner currently incarcerated at Edna Mahan Correctional Facility ("EMCF").  (3d Am. Compl. at ¶ 1.)  The plaintiff alleges that when she entered EMCF on March 14, 2008, she was suffering from various "pre-existing medical conditions, including lupus, severe hypertension, chronic renal disease requiring hemodialysis treatment, thyroid disease, chronic obstructive pulmonary disease, congestive heart failure and a seizure disorder triggered by her hypertension." (Id. at ¶¶ 14, 16.)  The plaintiff alleges that she advised medical staff at EMCF, including Dr. Braimbridge, of her medical conditions upon her arrival there, and provided them with a list of the medications and supplements she was taking.  (Id. at ¶ 17.)

Dr. Braimbridge is a physician who was employed or
contracted by CMS and later UMDNJ to provide medical treatment to
inmates at EMCF. (Id. at ¶ 2.) The plaintiff asserts that she
"specifically informed the medical staff, including . . . Dr.
Braimbridge, that . . . the only medication her outside
physicians had determined to be effective at controlling her
hypertension and, therefore preventing her seizures, was a
combination of minoxidle and clonidine." (Id.)[1] She asserts
that sometime in April 2008, her blood pressure reached a
"dangerously high level," leading to her discovery that "Dr.
Braimbridge had taken her off the combination treatment of
minoxidle and clonidine and had prescribed a different kind of
hypertension medication . . . without her knowledge." (Id. at ¶
18.) She alleges when she asked why her hypertension medication
had been changed, Dr. Braimbridge advised that because minoxidle
was a "non-formulary" medication, "CMS's policy was that it would
not approve such non-formulary medications for inmates at" EMCF.
(Id. at ¶ 19.) The plaintiff asserts that she suffered three
seizures on April 7, 2008, due to not receiving minoxidle and
clonidine, but after this incident Dr. Braimbridge provided these
medications until August 2008. (Id.) She further alleges that
from August 2008 to September 2008, she again went without

_____

[1] While the Court believes that "minoxidle" actually refers
to "minoxidil," we will retain the spelling used by the parties
for purposes of this memorandum opinion and accompanying order.

minoxidle medication "because of an extended delay in filling the prescription for it by . . . CMS and/or Braimbridge." (Id. at ¶ 23.)  According to the plaintiff, the lack of minoxidle caused her to suffer a brain hemorrhage.  (Id.)

The plaintiff alleges that she was admitted to St. Francis Hospital in August 2008 for surgery, to be performed by Dr. Shrager, to (1) remove an aneurysm in her left arm, and (2) place a dialysis access graft in her upper right arm.  (Id. at ¶ 21.) She asserts that Dr. Shrager "improperly placed the replacement dialysis access" in her lower right arm, instead of the upper right arm, and that the improper placement in the lower arm caused a blockage that resulted in numbness in her right hand. (Id. at ¶ 22.)  She further asserts that (1) another surgery was required to provide dialysis access in her right arm, (2) Dr. Shrager delayed in performing remedial surgery to her left arm, and (3) as a result of the delay, dialysis access in her arms became infeasible, necessitating a chest catheter for dialysis access.  (Id.)

According to the plaintiff, she was hospitalized several times between August 2008 and November 2008 due to infections in her chest catheter.  (Id. at ¶ 27.)  She states that her doctors informed her in November 2008 that due to the likelihood of recurrent infections at the catheter site, she needed to be placed on a kidney transplant list, a prerequisite to which is a

4

kidney transplant evaluation.  (Id.)  However, she asserts that
she did not receive the transplant evaluation until over a year
later, in December 2009, and that she still has not received a
kidney transplant.  (Id. at ¶ 28.)

CMS was responsible for providing medical staff to the New
Jersey Department of Corrections ("NJDOC") and for the care,
custody, and treatment of inmates at facilities including EMCF
from some indeterminate time predating the plaintiff's
incarceration at EMCF through September 30, 2008.  (Id. at ¶ 6.)
CMS's contract with NJDOC ended on September 30, 2008, and UMDNJ
took over healthcare services for inmates at EMCF on October 1,
2008.  (Id. at ¶¶ 24-25.)  The plaintiff alleges that both CMS
and UMDNJ had policies of not providing "non-formulary"
medications to inmates.  (Id. at ¶¶ 19, 26, 39.)  She further
alleges that in October 2008, after UMDNJ took over healthcare
services for inmates at EMCF, she did not receive timely refills
of medically necessary prescriptions, specifically Sensipar,
which is used to reduce elevated levels of parathyroid hormone in
people with chronic renal disease who are on hemodialysis
treatment.  (Id. at ¶ 30.)  She alleges that as a result of being
deprived of Sensipar, she experienced "extremely elevated
parathyroid levels," necessitating a partial thyroidectomy.  (Id.
at ¶ 31.)  She states that while her nephrologist ordered the

partial thyroidectomy in January or February 2010, she did not actually have the surgery until July 2010.  (Id.)

**DISCUSSION**

I.   **Applicable Legal Standards**

    A.   **Motion to Dismiss Standard**

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). At this stage, a "complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—-but it has not 'show[n]'—-that the 'pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)).

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the pleadings." In

6

re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Dr. Shrager moves for summary judgment in the alternative to his motion to dismiss, and has annexed, inter alia, certain medical records to the brief in support of his motion.  (Shrager Br., Exs. F, G, & H; dkt. entry no. 83, Shrager Reply Br., Exs. A-D.)  The Court declines Dr. Shrager's invitation to convert his motion to one for summary judgment, and will exclude from consideration the exhibits constituting "matters outside the pleadings."  Fed.R.Civ.P. 12(d).

### B.   Section 1983

To state a claim under Section 1983, a plaintiff must allege:  (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### C.   Eighth Amendment Claim

The plaintiff asserts that the defendants' conduct constituted deliberate indifference to her serious medical needs.  (Compl. at ¶¶ 36-42.)  Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment because it constitutes "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  A plaintiff, to succeed on an Eighth

7

Amendment medical-care claim, must first demonstrate that there was a serious medical need.  Coley v. Sulayman, No. 06-3762, 2007 WL 2306726, at *2 (D.N.J. Aug. 7, 2007).  Serious medical needs are those that have been diagnosed by a physician as requiring treatment or those that are so obvious that a lay person would recognize the necessity for medical attention.  See Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The plaintiff must next demonstrate that the defendant acted with deliberate indifference to the serious medical need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Deliberate indifference requires more than mere negligence or lack of due care.  Farmer v. Brennan, 511 U.S. 825, 835 (1994).  "Mere medical malpractice cannot give rise to a violation of the Eighth Amendment."  White v. Napoleon, 897 F.2d 103, 108 (3d Cir. 1990). To demonstrate deliberate indifference, the plaintiff must demonstrate that the defendant was "subjectively aware of the risk" of harm to the plaintiff.  Farmer, 511 U.S. at 828.  The plaintiff must allege acts or omissions that are sufficiently harmful to offend "evolving standards of decency."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).  "Where prison authorities deny reasonable requests for medical treatment . . .  and such denial exposes the inmate to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest.  Similarly

8

where knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care, the deliberate indifference standard has been met. . . . Finally, deliberate indifference is demonstrated [w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Monmouth Cnty. Corr. Inst. Inmates, 834 F.2d at 346. "[I]f necessary medical treatment [i]s . . . delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted).

## II.  Defendants' Separate Motions to Dismiss

### A.    Braimbridge/UMDNJ Motion

The Braimbridge/UMDNJ Motion pertains to events occurring after October 1, 2008.  These defendants characterize Dr. Braimbridge as "a UMDNJ employee from October 1, 2008 to present."  (Braimbridge/UMDNJ Br. at 3.)  Thus, the relevant factual allegations to be addressed with respect to the Braimbridge/UMDNJ Motion include:  (1) the delay in providing the plaintiff a kidney transplant evaluation after the procedure was recommended in November 2008; (2) the failure to timely refill the plaintiff's prescription for Sensipar, thus depriving her of it for one month; and (3) UMDNJ's alleged policy of not providing non-formulary medications to inmates.  (Id. at 6-7, 17.)

UMDNJ contends that it, as "an institution of the State of New Jersey," is entitled to immunity from suit under the Eleventh Amendment.  (Id. at 11.)  It further contends that Dr. Braimbridge is likewise entitled to Eleventh Amendment immunity with respect to the claims asserted against her in her official capacity as a UMDNJ employee.  (Id.)  UMDNJ and Dr. Braimbridge further argue that UMDNJ and Dr. Braimbridge in her official capacity are not "persons" amenable to suit under Section 1983. (Id. at 12.)  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  UMDNJ and Dr. Braimbridge alternatively assert that, immunity from suit notwithstanding, the claims asserted against them should be dismissed for failure to state a claim because the plaintiff did not establish the deliberate indifference prong of an Eighth Amendment violation. (Braimbridge/UMDNJ Br. at 13-19.)  Specifically, these defendants argue that the Third Amended Complaint contains "no allegations at all against Dr. Braimbridge from October 1, 2008 onward," such that any claims asserted against her in her individual capacity for this time period must be dismissed.  (Id. at 19.)

### 1.    Amenability of Dr. Braimbridge and UMDNJ to Suit Under Section 1983

The plaintiff disputes that UMDNJ and, by extension, Dr. Braimbridge, are entitled to Eleventh Amendment immunity, and argues that they are "persons" subject to suit under Section 1983.  (Pl. Br. at 6-8.)  See Simmons v. New Jersey, No. 09-1067,

10

2009 WL 3260602, at *5 & n.5 (D.N.J. Oct. 8, 2009) (assuming, for purposes of motion to dismiss, that prison doctor "and UMDNJ are 'state actors' subject to suit under § 1983"); <u>Fuchilla v. Layman</u>, 537 A.2d 652, 657 (N.J. 1988) (holding that UMDNJ is not the alter ego of the State of New Jersey for Eleventh Amendment purposes and therefore is a "person" within the meaning of Section 1983); <u>cf.</u> <u>Mauriello v. Univ. of Med. & Dentistry</u>, 781 F.2d 46 (3d. Cir. 1986) (stating that UMDNJ "is a public institution of higher learning," and observing that the parties did not contest that "the requisite state action exists" for purposes of dismissed UMDNJ  student's assertion of a due process claim against UMDNJ pursuant to Section 1983).[2] <u>But see</u> <u>Green v. Corzine</u>, No. 09-1600, 2010 WL 1133445, at *7 (D.N.J. Mar. 22, 2010) (concluding that "UMDNJ is an instrumentality of the state, so it is protected by the Eleventh Amendment, and the claims [brought under Section 1983] against UMDNJ must be dismissed").

Dr. Braimbridge and UMDNJ acknowledge that there is conflicting authority as to whether UMDNJ is entitled to Eleventh Amendment immunity or not, and note that (1) the factors considered by the New Jersey Supreme Court in <u>Fuchilla</u> in

---

[2] As Dr. Braimbridge and UMDNJ point out, the <u>Mauriello</u> court did not address any Eleventh Amendment issues, and it may have been the case that UMDNJ waived the affirmative defense of Eleventh Amendment immunity in order for that case to go forward under Section 1983.  (Dkt. entry no. 82, Braimbridge/UMDNJ Reply Br. at 8 n.4.)  Dr. Braimbridge and UMDNJ expressly disclaim any such waiver here.  (<u>Id.</u>)

resolving this question have since been modified by <u>Fitchik v. N.J. Transit Rail Ops., Inc.</u>, 873 F.2d 655, 659 (3d Cir. 1989), and <u>Benn v. First Judicial Dist.</u>, 426 F.3d 233, 239-40 (3d Cir. 2005); (2) the <u>Mauriello</u> case did not address Eleventh Amendment immunity; and (3) for the Court to accurately determine the issue, it may be necessary for them to "produce additional evidence not yet part of this court's record . . . so that the <u>Fitchik</u> factors may be fully covered." (Braimbridge/UMDNJ Reply Br. at 6-9.) Dr. Braimbridge and UMDNJ suggest that this issue may be better presented, if necessary, in a motion for summary judgment or other manner directed by the Court. (<u>Id.</u> at 9.)

The <u>Fitchik</u> factors for determining whether an entity is an alter ego of the state entitled to immunity from suit in federal court under the Eleventh Amendment are (1) whether the money that would pay the judgment would come from the state, (2) the status of the agency under state law, and (3) the degree of autonomy the agency has. 873 F.2d at 659. The plaintiff ostensibly addresses the <u>Fitchik</u> factors in her surreply, but actually only rehashes <u>Fuchilla</u> to contend that this persuasive authority remains valid in light of <u>Fitchik</u>, without any proffer as to how the <u>Fitchik</u> analysis would be resolved today, twenty-three years after <u>Fuchilla</u> was decided. (Dkt. entry no. 90, Pl. Surreply at 3-5.)

Because we find, as discussed below, that the plaintiff has failed to state a claim upon which relief can be granted against

either UMDNJ or Dr. Braimbridge for the post-October 1, 2008
period, we decline to make a determination at this juncture
regarding UMDNJ's status as alter ego <u>vel</u> <u>non</u> of the State of New
Jersey.

### 2.   Claims Against Dr. Braimbridge as UMDNJ Employee

UMDNJ and Dr. Braimbridge contend that the Third Amended
Complaint contains "no specific factual allegations . . . against
Dr. Braimbridge as a UMDNJ employee from October 1, 2008 to
present." (Braimbridge/UMDNJ Br. at 8.)  The plaintiff responds
that she "makes direct allegations that Dr. Braimbridge (both in
her official and individual capacity) participated in, and had
direct knowledge of, constitutional violations against Plaintiff
during the post-October 1, 2008 time period." (Pl. Consol. Br.
at 13 (citing 3d Am. Compl. at ¶¶ 17-20, 23, 30-31).)

The plaintiff's characterization of the allegations in the
Third Amended Complaint as encompassing specific allegations
regarding Dr. Braimbridge for the post-October 1, 2008 time
period lacks merit.  Paragraphs 17-20 and 23 of the Third Amended
Complaint, on their face, pertain to events occurring prior to
October 1, 2008.  Those events are addressed by CMS and Dr.
Braimbridge in their separate motion to dismiss, and the Court
discusses the arguments made therein below.  <u>See</u> <u>infra</u> at 23-26.
Paragraphs 30-31 contain no specific allegations against Dr.
Braimbridge.  Paragraph 30 refers generically to "the medical

13

department," and paragraph 31 states that the plaintiff "was told by her doctor" that she needed a partial thyroidectomy and that her "nephrologist placed an order" for that procedure "on or about January/February 2010." (3d Am. Compl. at ¶¶ 30-31.) Absent any specific allegations of deliberate indifference on the part of Dr. Braimbridge as a UMDNJ employee, she is entitled to dismissal of any claims asserted against her in either her individual or her official capacities for the post-October 1, 2008 time period. See Green, 2010 WL 1133445, at *5 (dismissing complaint insofar as asserted against UMDNJ, where complaint "contains no specific allegations of deliberate indifference on the part of UMDNJ"); Simmons, 2009 WL 3260602, at *1 n.3 (dismissing with prejudice all claims against prison administrator, where plaintiff made no factual allegations regarding that defendant); see generally Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.") (internal citations omitted).[3]

---

[3]  Paragraph 37 of the Third Amended Complaint is a conclusory allegation that Dr. Braimbridge was deliberately indifferent to the plaintiff's serious medical needs that does

14

The Third Amended Complaint will therefore be dismissed with respect to Dr. Braimbridge for the post-October 1, 2008 period.

### 3.  Claims Against UMDNJ

The plaintiff alleges that both CMS and UMDNJ had an unconstitutional policy of "not filling prescriptions for 'non-formulary' medications." (3d Am. Compl. at ¶ 39.)  However, the only factual allegations made by the plaintiff with respect to an alleged policy of not filling prescriptions for "non-formulary" medications pertain to Dr. Braimbridge's alleged refusal to provide the minoxidle-clonidine combination to treat the plaintiff's hypertension in April 2008.  (3d Am. Compl. at ¶¶ 18-19.)  The plaintiff makes no factual allegations pertaining to the alleged policy of UMDNJ to not fill "non-formulary" prescriptions, nor does she allege that she was denied prescription medication after October 1, 2008, on the basis of this alleged policy.  (Cf. 3d Am. Compl. at ¶ 30 (alleging, without any reference to "formulary" or "non-formulary" status of medication, that sometime after UMDNJ took over healthcare services at EMCF, the plaintiff "was without her Sensipar® medication . . . for an entire month because the medical department refused to refill her prescription"); id. at ¶ 26 (speculating that "the policy of not providing 'non-formulary'

_____

not distinguish between the pre- and post-October 1, 2008 time periods.

15

medications to inmates continued after UMDNJ began providing comprehensive medical services at [EMCF]").)  This claim, insofar as asserted against UMDNJ, will be dismissed.

We next consider the plaintiff's specific allegation that UMDNJ caused her to go without her Sensipar medication for one month due to an alleged refusal to refill the prescription.  We agree with UMDNJ's argument that insofar as the plaintiff alleges that this was a one-time incident, and the plaintiff was apparently otherwise provided with Sensipar during the post-October 1, 2008 period, this allegation does not support the plaintiff's claim that UMDNJ implemented a "systematic policy of not filling prescriptions" or "fail[ed] to act affirmatively to create a treatment policy so that inmates at [EMCF] received prescriptions and prescription refills for medically necessary and life sustaining medications in a timely manner."  (3d Am. Compl. at ¶¶ 38-39.)  Moreover, the plaintiff's allegation of a one-time delay in receiving Sensipar is personal to her and therefore fails to allege a widespread custom of deliberate indifference in timely providing prescription medication to inmates.  Afdahl v. Cancellieri, No. 09-1332, 2009 WL 5213992, at *5 (D.N.J. Dec. 21, 2009).

As to the plaintiff's allegation that she was subject to an unreasonable delay of over one year in receiving a kidney transplant evaluation, we find that this claim is inadequate.

The allegations regarding the kidney transplant evaluation delay fail to identify (1) who, precisely, ordered the evaluation, and (2) who at EMCF or UMDNJ, if anyone, was informed that such evaluation had been ordered.  (3d Am. Compl. at ¶ 27.)[4]  As discussed above, the plaintiff has not identified Dr. Braimbridge as the relevant actor with respect to the kidney transplant evaluation delay, and in any event, liability may not be imposed on UMDNJ solely on a theory of respondeat superior.  Rode, 845 F.2d at 1207.  Even if the plaintiff had specified individuals having actual knowledge of her need for a kidney transplant and the prerequisite evaluation, in order for an entity such as UMDNJ to be liable under Section 1983 for the actions of its employees, the plaintiff must allege the existence of "a relevant . . . policy or custom and that the policy caused the constitutional violation."  Natale, 318 F.3d at 583-84.  There is simply nothing in the allegations regarding the kidney transplant evaluation delay that would tend to establish liability on the part of UMDNJ as a policymaker.  See id. at 584 (setting forth "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity

---

[4] The context of this paragraph suggests that "Plaintiff's doctors" refers to unnamed physicians who treated the plaintiff during the course of her "several" hospitalizations between August 2008 and November 2008.  (3d Am. Compl. at ¶ 27.)  Based on other allegations in the Third Amended Complaint, we presume that these hospitalizations may have occurred at St. Francis Hospital.  (Id. at ¶¶ 21, 29.)

for whom the employee works, thereby rendering the entity liable under" Section 1983.)[5]  The plaintiff's claim that she was subject to a five-month delay in receiving a partial thyroidectomy in 2010 suffers from identical infirmities.  (3d Am. Compl. at ¶ 31.)

For the foregoing reasons, the Court will grant the Braimbridge/UMDNJ Motion and dismiss the Third Amended Complaint insofar as asserted against them for post-October 1, 2008 conduct.

**B.   Shrager Motion**

Dr. Shrager, like UMDNJ and Dr. Braimbridge, contends that (1) he is immune from suit under the Eleventh Amendment; (2) he is not a "person" amenable to suit under Section 1983; and (3) the allegations in the Third Amended Complaint fail to state a

---

[5]   These three situations are:  (1) "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy"; (2) "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself"; and (3) "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Natale, 318 F.3d at 584 (internal quotations and citation omitted).  The Third Amended Complaint is devoid of any factual allegations identifying what UMDNJ employees did, or failed to do, that resulted in the kidney transplant evaluation delay; it merely states that she did not receive the evaluation until December 2009, and she still has not received a kidney transplant.  (3d Am. Compl. at ¶ 28.)

claim for deliberate indifference to serious medical needs
against Dr. Shrager.  (Shrager Br. at 3.)  Dr. Shrager contends
that his treatment of the plaintiff arose in the context of his
employment at St. Francis Hospital pursuant to the contract
between CMS and the NJDOC to provide medical services to inmates
and, thus, he should be considered to have "worked for the State
of New Jersey, Department of Corrections."  (Id. at 11.)

Dr. Shrager does not contest that the plaintiff had a
serious medical need.  (Id. at 15.)  He argues that the plaintiff
cannot show that he was deliberately indifferent to her serious
medical needs, however, because (1) the allegation that Dr.
Shrager improperly placed a dialysis access in her lower right
arm instead of her upper right arm amounts to mere medical
malpractice at best, and (2) the alleged delay of the remedial
surgery to correct the improper placement of the dialysis access
was caused by the plaintiff, not Dr. Shrager.  (Id. at 19-20.)

With respect to the allegation that Dr. Shrager improperly
placed a dialysis access in the plaintiff's lower right arm
instead of her upper right arm, we agree with Dr. Shrager that
this constitutes mere negligence or medical malpractice, and
therefore cannot sustain a cause of action under the Eighth
Amendment.  Estelle, 429 U.S. at 105-06; see, e.g., Cook v. Shah,
No. 09-6523, 2010 WL 5464234, at *7 (D.N.J. Dec. 28, 2010)
(dismissing claim against surgeon who "failed to secure three

arteries when he removed Plaintiff's large intestines . . . thereby causing Plaintiff to lose much blood, experience severe pain . . . and undergo a second surgery" because such allegations asserted "classic negligence and, as such, are not actionable under" Section 1983).

We next consider the alleged delay in providing the remedial surgery to correct the placement of the dialysis access.  As noted above, Dr. Shrager submitted medical records of the plaintiff, which he argues would tend to establish for purposes of summary judgment that the delay in providing remedial surgery to fix the location of the dialysis access was caused by the plaintiff's own refusal to undergo the surgery as scheduled, rather than any deliberate indifference on his part.  (Shrager Br. at 22.)  The Court has declined to convert Dr. Shrager's motion to dismiss to one for summary judgment, and will not consider such proffered evidence in connection with Dr. Shrager's motion to dismiss.  However, we note that Dr. Shrager's assertion that the plaintiff herself refused to undergo the scheduled remedial surgery is corroborated by the plaintiff's original <u>pro se</u> Complaint in this case.  (Shrager Br. at 20.)  The plaintiff stated that she

> was rescheduled for another surgery with the same
> doctor [referring to Dr. Shrager] at St. Fransis
> hospital [sic].  I saw the doctor and informed him that
> I wanted to get a second opinion before I have another
> surgery.  The doctor said to me that if I did not have
> the surgery right then that he would not put me back on

20

> his schedule for surgery.  He also stated that he had
> changed his vacation schedule to fit me in for the
> surgery and I should be considerate and have the
> surgery.  I still wanted the second opinion.

(Dkt. entry no. 1, Compl., Stmt. of Claims at 3.)

The Court will consider the allegations in the original
Complaint along with those of the Third Amended Complaint for
purposes of resolving the Shrager Motion.  See Weigher v. Prison
Health Servs., 402 Fed.Appx. 668, 669 n.1 (3d Cir. 2010) (noting
that district court took into account both the original and
amended complaint in deciding motion to dismiss and doing same on
appeal); Gold v. Metz Lewis Law Firm, LLC, No. 08-207, 2010 WL
597996, at *3 (W.D. Pa. Feb. 17, 2010) (considering factual
averments in plaintiff's prior complaints, as well as his second
amended complaint, in deciding motion to dismiss).  We find that
the original Complaint and Third Amended Complaint, read
together, require dismissal of the claim against Dr. Shrager
insofar as the plaintiff contends that a delay in receiving the
remedial surgery constituted deliberate indifference to her
serious medical needs.  The plaintiff's bald assertion that
"Defendant Dr. Shrager delayed in performing this required
remedial surgery" is contradicted by the allegations in her
original Complaint indicating that the plaintiff was in fact
scheduled for the remedial surgery and brought to St. Francis
Hospital, but refused to have the procedure done.  (3d Am. Compl.
at ¶¶ 22, 40; Compl., Stmt. of Facts at 3.)  Accordingly, we find

21

that dismissal of this claim against Dr. Shrager is appropriate, as there can be no plausible inference that he "delay[ed] necessary medical treatment for non-medical reasons." <u>Rouse</u>, 182 F.3d at 197.

Finding dismissal of the Third Amended Complaint appropriate with regard to all allegations against Dr. Shrager, we decline to address Dr. Shrager's remaining arguments regarding his status as a state actor and his amenability to suit pursuant to the Eleventh Amendment and Section 1983. We will grant the Shrager Motion and dismiss the Third Amended Complaint insofar as asserted against Dr. Shrager.

### C.   Braimbridge/CMS Motion

CMS and Dr. Braimbridge, in support of their motion to dismiss the Third Amended Complaint insofar as asserted against them as to allegations occurring before October 1, 2008, contend that the Third Amended Complaint fails to state a claim for an Eighth Amendment violation against them. (Braimbridge/CMS Br. at 7.) Citing the precept that "a court will generally not find deliberate indifference when some level of medical care has been offered to the inmate," they characterize the plaintiff's claims as "mere disagreement over acceptable treatment." (<u>Id.</u> (citing <u>Brown v. Monmouth Cnty. Sheriff's Dep't of Corr. & Med. Dep't</u>, No. 02-5591, 2005 WL 1116370, at *9 (D.N.J. May 10, 2005).)

The allegations pertaining to CMS and Dr. Braimbridge during the period of the plaintiff's admittance to EMCF through October 1, 2008, can be summarized as follows:  (1) in April 2008, Dr. Braimbridge, pursuant to a CMS policy not to provide "non-formulary" medications to inmates, switched the plaintiff's minoxidle-clonidine combination with some other hypertension medication without her knowledge; (2) the plaintiff suffered seizures in April 2008 as a result, and Dr. Braimbridge thereafter provided the minoxidle-clonidine treatment to the plaintiff; (3) Dr. Braimbridge and/or CMS again deprived the plaintiff of minoxidle "from August 2008 through September 2008 . . . because of a delay in filling the prescription for it"; (4) the plaintiff suffered a brain hemorrhage as a result of this deprivation; and (5) when the plaintiff was released from St. Francis Hospital after being treated for the brain hemorrhage, with orders to take the minoxidle-clonidine combination, she "did not immediately receive the required medication."  (3d Am. Compl. at ¶¶ 18-20, 23.)[6]

The allegation regarding Dr. Braimbridge and/or CMS's decision to provide the plaintiff a hypertension medication other

_____

[6] The factual allegations regarding the plaintiff's dialysis access and chest catheter infections appear to implicate Dr. Shrager only.  (3d Am. Compl. at ¶¶ 21-22.)  The factual allegations regarding the withholding of Sensipar, resulting partial thyroidectomy, and delay in providing the plaintiff a kidney transplant evaluation all occurred after the October 1, 2008 date.  (Id. at ¶¶ 27-31, 37.)

than the minoxidle-clonidine combination the plaintiff asserts was medically necessary does not amount to an Eighth Amendment violation.  Deliberate indifference is manifest where "prison authorities deny reasonable requests for medical treatment" or where "knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care."  Monmouth Cnty. Corr. Inst. Inmates, 834 F.2d at 346 (citations omitted).  The plaintiff here does not contend that Dr. Braimbridge or CMS refused to provide medical treatment or care; rather, she alleges that "Dr. Braimbridge . . . had prescribed a different kind of hypertension medication."  (3d Am. Compl. at ¶ 18.)  Treatment of an inmate's medical condition, even by using formulary drugs instead of non-formulary drugs previously prescribed by an inmate's civilian physician, does not amount to a constitutional violation, even where such treatment is not successful.  See Rozzelle v. Rossi, 307 Fed.Appx. 640, 642-43 (3d Cir. 2008); accord French v. Quarterman, No. 09-74, 2010 WL 998354, at *7 (E.D. Tex. Jan. 22, 2010) (dismissing deliberate indifference claim based on prison officials' refusal to treat plaintiff with clonidine, a non-formulary medication, as "without merit" where plaintiff acknowledged receiving "several different kinds of high blood pressure medication").  Therefore, the Court will dismiss the Third Amended Complaint insofar as it asserts that Dr. Braimbridge and/or CMS exhibited deliberate indifference to the

plaintiff's serious medical needs by treating her hypertension with medications other than the minoxidle-clonidine combination from the time of her arrival at EMCF in March 2008 through sometime in April 2008.

The plaintiff's allegations of delays in receiving these medications in August and September 2008, however, require closer examination.  Viewing the facts alleged in the Third Amended Complaint in the light most favorable to the plaintiff, we observe that Dr. Braimbridge would have been aware of the plaintiff's need for the minoxidle-clonidine combination as of April 2008, when she suffered the seizure incident and was thereafter prescribed and administered the combination.  (3d Am. Compl. at ¶ 20.)  For Dr. Braimbridge to have allegedly deprived the plaintiff of minoxidle in August and September 2008, including upon the plaintiff's return to EMCF from St. Francis Hospital following treatment for a brain hemorrhage allegedly caused by such deprivation, creates a plausible inference that Dr. Braimbridge's state of mind could have been sufficiently culpable to meet the deliberate indifference standard.  (3d Am. Compl. at ¶ 23.)  See Estelle, 429 U.S. at 104-05 (stating that deliberate indifference can be "manifested by . . . intentionally interfering with the treatment once prescribed"); cf. Ayala v. Terhune, 195 Fed.Appx. 87, 91 (3d Cir. 2006) (observing that "sporadic delays (not exceeding four days at any one time) in

25

providing prescription medication . . . do not amount to deliberate indifference") (emphasis added).  The circumstances of the alleged deprivation of minoxide in August and September 2008 must be presented to the Court on an adequately developed record in order for the Court to determine whether the plaintiff will ultimately be able to show that the deprivation amounts to more than mere malpractice or negligence.  See, e.g., Byrd v. Shannon, No. 09-1551, 2010 WL 5889519, at *6 (M.D. Pa. Nov. 24, 2010) (granting summary judgment in favor of prison health care administrator and supervising nurse, where plaintiff did not present evidence that those defendants "were responsible for [delays in providing eye drops to treat plaintiff's glaucoma] or failed to take reasonable action after being made aware of those delays").  At this procedural posture, the plaintiff's allegation that Dr. Braimbridge caused or acquiesced in unreasonable delays in filling the plaintiff's minoxide prescription "for non-medical reasons" allows that claim to go forward as to Dr. Braimbridge.  (3d Am. Compl. at ¶ 37.)

CMS, however, cannot be held liable on a theory of respondeat superior with respect to the allegations against Dr. Braimbridge as its employee.  See Natale v. Camden County Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003); Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993).  CMS may be held liable only if the plaintiff "provide[s] evidence that there was a relevant

26

[CMS] policy or custom, and that the policy caused the
constitutional violation" alleged.  Natale, 318 F.3d at 584
(citations omitted).  "Policy is made when a decision-maker
possessing final authority to establish . . . policy with respect
to the action issues an official proclamation, policy or edict."
Miller v. Corr. Med. Sys., 802 F.Supp. 1126, 1132 (D. Del. 1992)
(citations omitted).  "Custom, on the other hand, can be proven
by showing that a given course of conduct, although not
specifically endorsed or authorized by law, is so well-settled
and permanent as virtually to constitute law."  Id. (citations
omitted).

     The plaintiff alleges that CMS violated her Eighth Amendment
rights by "failing to act affirmatively to create a treatment
policy so that inmates at [EMCF] received prescriptions and
prescription refills for medically necessary and life sustaining
medications in a timely manner."  (3d Am. Compl. at ¶ 38.)  This
amounts to a claim that CMS had an unconstitutional custom of
deliberate indifference in timely providing prescription
medication to inmates.  "A custom is an act that has not been
formally approved by an appropriate decisionmaker but that is so
widespread as to have the force of law."  Natale, 318 F.3d at
584.  Here, the plaintiff only alleges a personal delay in
treatment.  This alleged personal deprivation is not sufficient
to demonstrate a widespread custom.  See Afdahl, 2009 WL 5213992,

at *5.  The plaintiff has therefore failed to allege a custom or policy on the part of CMS, and the Court will dismiss the Third Amended Complaint insofar as it is asserted against CMS.

**CONCLUSION**

The Court, for the reasons stated <u>supra</u>, will grant the Braimbridge/UMDNJ Motion.  The Court will also grant the Shrager Motion.  The Court will grant in part and deny in part the Braimbridge/CMS Motion.  To the extent the Court is dismissing aspects of the Third Amended Complaint, such dismissal shall be with prejudice, as the plaintiff has had three opportunities to amend her complaint.  The Court will issue an appropriate order and judgment.


                                    s/ Mary L. Cooper
                                    **MARY L. COOPER**
                                    United States District Judge


Dated:    July 19, 2011